SINESIO CORDERO, demandante y apelado, *v.* DEMETRIO RIVERA Y NELITO RIVERA, demandados y apelantes.

Número 10357.

*Sometido:* 1 de marzo de 1951. *Resuelto:* 14 de abril de 1953.

*L. Santiago Carmona,* abogado del apelante; *Gustavo Jiménez Sicardó,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

En el presente pleito se ejercitan dos causas de acción.

Como primera, sobre otorgamiento de escritura, se alega que con anterioridad al 4 de noviembre de 1929 el demandante compró a los demandados, mediante contrato verbal y por el precio de $800, una finca de 18.60 cuerdas en el barrio Palmarito del término municipal de Corozal, pagando la referida suma en el mismo acto, habiéndole informado los vendedores, al recibir dicha cantidad, que el demandado Demetrio Rivera se obligaba a otorgarle "la correspondiente y oportuna escritura de compraventa" de la referida finca para que el demandante pudiera inscribir su título en el registro de la propiedad; que hasta el año 1937 el demandante pagó todas las contribuciones sobre la finca objeto del pleito, sin que hasta la fecha de interposición de la demanda, 12 de marzo de 1947, hubieren los demandados otorgado escritura a favor del demandante; que el 30 de noviembre de 1943 el demandado Demetrio Rivera envió al demandante un proyecto de escritura de compraventa por 10.60 cuerdas y no por 18.60, el cual proyecto no fué aceptado por el demandante; que aun cuando el demandante goza y disfruta de 10.60 cuerdas de la finca que comprara a los demandados, el demandado Demetrio Rivera no solamente se niega a cumplir el contrato de compraventa otorgando la correspondiente escritura si que también ilegal

y arbitrariamente usa y disfruta sin título para ello, desde antes del año 1937, ocho cuerdas de las 18.60 cuerdas adquiridas por el demandante.

Como segunda causa de acción, sobre daños y perjuicios, se alega que el demandado Demetrio Rivera, "valiéndose de falsas y fraudulentas maquinaciones", solicitó y obtuvo del Departamento de Hacienda que los recibos por contribuciones sobre la propiedad, que anteriormente eran expedidos a favor y a nombre del demandante por la totalidad de las 18.60 cuerdas por él adquiridas, fueran cambiados, haciéndose un recibo a su nombre por solamente 10.60 cuerdas, todo esto en contra de la voluntad y con la protesta de los demandantes; que además de llevar más de diez años gozando y disfrutando de las ocho cuerdas de las que se apropió, Demetrio no le ha entregado ni los frutos producidos ni el importe de los mismos, y que por razón de no haberle éste otorgado el título de las 18.60 cuerdas, se vió privado el demandante de vender dicha finca y de obtener préstamos para intensificar la producción de la misma. Reclamó por unos y otros conceptos, daños en la suma de $7,000, más las costas y $700 para honorarios de abogado.

Además de interponer como defensa especial la de que la demanda no aducía causa de acción y la de que, en todo caso, ésta estaba prescrita, los demandados negaron las alegaciones esenciales de la demanda, alegando en contrario, en síntesis, que Demetrio Rivera nunca vendió al demandante las 18.60 cuerdas de terreno; que lo que hizo fué comprar a dicho demandante ocho cuerdas, pagándole su precio, o sea, $150; que la finca de 18.60 cuerdas a que se refiere la demanda fué propiedad del demandado Demetrio Rivera, habiéndola éste vendido a Manuel Rivera, el otro codemandado, siendo éste quien la vendió al demandante Sinesio Cordero, quien a su vez, posteriormente, le vendió al demandado Demetrio Rivera ocho cuerdas de dicha finca; que no estando dicha finca inscrita en el registro de la propiedad, el demandante convino con Demetrio Rivera que éste tramitara un expediente de dominio

por toda la propiedad y una vez inscrito el dominio a su favor Demetrio otorgaría escritura al demandante Cordero por 10.60 cuerdas, de las cuales estaba dicho demandante en posesión material desde antes del año 1929; que dicho demandante no aceptó la referida escritura de compraventa por las referidas 10.60 cuerdas; que el demandante Cordero se comprometió a pagar al demandado Demetrio Rivera la suma de $125 como la parte que le correspondía a dicho demandante en los gastos de tramitación del expediente de dominio convenido con dicho demandado y que estuvo conforme en que la finca de 18.60 cuerdas fuera dividida, recibiendo su parte de 10.60 cuerdas, por la cual es que solamente paga contribuciones.

Por vía de contrademanda, el demandado Demetrio Rivera alegó que Cordero le estaba adeudando la suma de $125 que se comprometió a pagarle una vez tramitara Rivera el expediente de dominio; que por las actuaciones del demandante, en virtud de los hechos expuestos en la contestación a la demanda, el contrademandante Demetrio Rivera ha incurrido en gastos de diversa índole ascendentes a más de $400.

El contrademandado negó las alegaciones de la contrademanda.

Luego de un juicio en sus méritos, el juez sentenciador declaró con lugar la demanda, ordenando al demandado Demetrio Rivera y a su esposa otorgar escritura de compraventa a favor del demandante Sinesio Cordero, de la finca de 18.60 cuerdas objeto del pleito, por el precio de $700; declarando sin lugar la segunda causa de acción por no haber sido probados los daños y perjuicios alegados, y declarando a su vez con lugar la contrademanda, condenando al demandante al pago de la suma de $250.

En apelación, el demandado Demetrio Rivera sostiene en su alegato (1) que no existe causa de acción; (2) que en el supuesto de que exista, la misma está prescrita; (3) que el tribunal apreció erróneamente la prueba y actuó el juez sen-

tenciador con mente prevenida y con pasión y prejuicio; (4) que erró el juez sentenciador al conocer del presente litigio, luego de haberse inhibido al solicitarse el traslado del caso bajo la alegación de que no se podría obtener un juicio imparcial; y (5) que la sentencia es incongruente por cuanto el juez dictó una sentencia en "reivindicación y otra en cobro de dinero, tratándose de un cumplimiento específico".

Argumenta el apelante sus dos primeros señalamientos de error sosteniendo que como en la demanda se alega que el contrato de compraventa fué uno verbal, sin hacerse constar en documento público según requiere el artículo 1232 del Código Civil, (¹) ed. 1930, no procede, en derecho, la acción sobre otorgamiento de escritura aquí ejercitada; y que, en todo caso, la misma estaría prescrita.

No estamos de acuerdo. En cuanto al primero, baste decir que bien se considere la acción aquí ejercitada una dirigida, según la demanda, a obtener el otorgamiento del documento público que, como constancia formal del contrato de compraventa que se alegó perfeccionado, requiere el artículo 1232, *Berríos* v. *Dávila*, 28 D.P.R. 821; 8 Manresa (Vol. 2), Comentarios al Código Civil, 5ª ed., págs. 479 a 486—en el cual caso estaría autorizada por el artículo 1231 del Código Civil (²)— o bien se considere, según demostró la prueba, una dirigida a obtener el otorgamiento de la escritura como consecuencia de un nuevo contrato, la acción procede en derecho.

En cuanto al segundo, siendo dicha acción una personal que no tiene señalado término especial de prescripción, el término para ejercitarla es el de 15 años que establece el

---

(¹) Dicho artículo, en lo pertinente, provee:

"Deberán constar en documento público:

"1. Los actos y contratos que tengan por objeto la creación, transmisión, modificación o extensión de derechos reales sobre bienes inmuebles."

(²) El artículo 1231 dispone:

"Si la ley exigiere el otorgamiento de escritura u otra forma especial para hacer efectivas las obligaciones propias de un contrato, los contratantes podrán compelerse recíprocamente a llenar aquella forma desde que hubiese intervenido el consentimiento y demás requisitos necesarios para su validez."

artículo 1864 del propio Código Civil. *Calderón* v. *Registrador*, 46 D.P.R. 778; *Berríos* v. *Dávila*, supra. Y aun cuando de la faz de la demanda—por alegarse que el contrato verbal se celebró en 1929 y comenzarse la acción en 1947—dicha acción aparecía prescrita, habiéndose establecido por la prueba que el demandado se obligó a otorgar dicha escritura luego de que tramitara un expediente de dominio a su nombre, en el que incluiría la finca de 18.60 cuerdas, sin que aparezca de la prueba la fecha en que dicho expediente en efecto se tramitara, no puede precisarse el punto de partida para comenzar a contar el período prescriptivo, pues no se conoce la fecha desde la cual pudo el demandante exigir el cumplimiento de la obligación, según lo pactado. Artículo 1869, Código Civil. Y bajo cualquier circunstancia, la prueba revela gestiones extrajudiciales del demandante que de acuerdo con el artículo 1873 del propio cuerpo legal tuvieron el efecto de interrumpir la prescripción de la acción. En tales condiciones tenemos que concluir que la misma no estaba prescrita cuando fué iniciada.

■■ El tercer señalamiento, al efecto de que el juez sentenciador apreció erróneamente la prueba "y actuó con mente prevenida y con pasión y prejuicio" requiere primeramente un detallado resumen, y luego un minucioso análisis de la prueba pasada en el juicio. Veamos.

### PRUEBA DEL DEMANDANTE.

La prueba del demandante incluye, además de su propio testimonio, los de los codemandados Manuel (Nelito) Rivera y Demetrio Rivera y los de Petra Cordero, Leopoldo Santiago Carmona y Felipe Cordero.

*Manuel (Nelito) Rivera* declaró, en síntesis, que conoce al demandante Sinesio Cordero "desde él niño". Hizo un negocio con él no recuerda la fecha, "si fué en el 1924 ó 1925" ... "Ese negocio consistió en que yo le compré al Sr. Demetrio Rivera 18 cuerdas de terreno" ... "No recuerdo bien si fué

por 750 pesos o por 800 pesos"... "Por unos meses la tuve yo para venderla, para *negociar* con ella." Esa finca comprada a Demetrio Rivera se la vendió a Sinesio Cordero. No recuerda si la venta fué por 750 u 800 dólares. Ni Demetrio Rivera le otorgó escritura cuando se la vendió a él, ni él le otorgó escritura a Sinesio Cordero cuando se la vendió a éste. El convenio fué que Demetrio Rivera le otorgara escritura o "un documento extrajudicial" directamente a favor de Sinesio Cordero. Conoce bien la finca. Cuando la vendió a Sinesio Cordero, éste entró en posesión y ocupó las 18 cuerdas. Está seguro "porque yo estuve como un año viviendo en casa de él después que yo vendí el terreno". Ahora sólo disfruta de 10 cuerdas 60 centavos "porque el Sr. Cordero le vendió 8 cuerdas a Demetrio Rivera. Lo sé porque ellos mismos me lo dijeron: por el señor Cordero que es mi compadre." No sabe cómo se hizo esa transacción, no estaba presente. Recuerda que fué en 1936 porque "me enfermé en 1937, pues en el 1936 fué la operación de esa venta, que me lo dijeron ellos, porque se vencieron las contribuciones, iban a ejecutar la finca, y se iban a llevar la subasta; y entonces él [Cordero] le vendió las ocho cuerdas a Demetrio Rivera para pagar las contribuciones y para pagar una cuenta." Eso se lo informaron "mi compadre Sinesio Cordero y mi ahijado; ellos son como familia." A Demetrio Rivera él le compró por $650, y se ganó "un promedio de 100 pesos." No sabe lo que pagaba la finca de contribuciones porque no tuvo que pagarlas; "yo la vendí rápido." Cordero era casado al comprarle a él la finca y al venderle las ocho cuerdas a Rivera.

En la repregunta reiteró que el demandante tiene en la actualidad la posesión de 10 cuerdas con 60 centavos; que originalmente tenía 18 cuerdas, de las que vendió 8 cuerdas a Demetrio Rivera "para pagar las contribuciones y una cuenta." Esa parcela de 8 cuerdas valía $150. La mejor parte de la finca son las 10 cuerdas que ha conservado el demandante.

*Sinesio Cordero*, el demandante, declaró que compró 18 cuerdas de terreno a Manuel Rivera. Le pagó $700 por ellas. No le otorgó escritura, "quedamos en que Demetrio [Rivera] tenía que hacerle la escritura al *compay* Nelito [Manuel Rivera] y después tuvimos un acuerdo de que el *compay* Nelito, es decir de que Demetrio me hiciera la escritura por el *compay* Nelito." Entró en posesión de 18 cuerdas. Hoy día sólo tiene 10 cuerdas. Al explicar esto dijo "pues lo que pasó fué que Demetrio dice que yo le vendí 8 cuerdas; y yo no le vendí ningún terreno; porque yo no he hecho ninguna clase de negocio con él" . . . "Yo no puedo vender. Yo no he vendido. Yo soy casado y mi señora no estaba presente cuando eso." Consiguió el dinero para comprar a Manuel Rivera "de otra finca que yo tenía, que la vendí. Sucedió que yo tenía una finquita y le debía a Don Cristóbal Berio 200 pesos y entonces la vendí para pagarle los 200 pesos a Don Cristóbal; la vendí en 1,400 pesos y entonces cogí 700 pesos y le pagué a Nelito la finca; que yo compré para mi señora, porque ella después me dijo que no la dejaba vender." Cuando compró la finca la dedicó "a sembrar plátanos, yautías y frutos menores." Las 18 cuerdas no estaban cercadas. Entró en posesión a base de los puntos que le indicó Manuel Rivera. Demetrio se apoderó luego de ocho cuerdas, no recuerda cuándo.

En la repregunta reiteró que no recuerda qué día fué que Demetrio se quedó con una parte de la finca. Declaró que no es cierto que por el año 1935 fuera Demetrio Rivera con Severo Ortiz y Tomás Rivera donde él a celebrar un contrato sobre la compraventa de las ocho cuerdas.(³) Al preguntársele si "no recuerda que estos señores, Severo Ortiz, Tomás Rivera y Demetrio Rivera fueron al cerrito arriba por el ca-

(³) En relación a esto se desarrolló el siguiente incidente:
"P. ¿Es o no es cierto que allá por el año 1935 estos señores Isabelo digo Severo Ortiz y Tomás Rivera fueron con Demetrio Rivera donde usted a cerrar un contrato usted sobre la compraventa de las ocho cuerdas?
"*Demandados:* El testigo empezó a hacer un gesto así (afirmativo), y después dijo que no.
"*La Corte:* El Juez ha estado mirando al testigo y aparentemente él

mino de la finca y que usted fué con su esposa y con su hija y con su hijo para la compra de las ocho cuerdas que hizo Demetrio Rivera" contestó lo siguiente: "Mi esposa no, porque mi esposa no estaba en ese tiempo; ella estaba por acá, por San Juan." Al insistir el abogado del demandado en su pregunta contestó: "No. Yo no he hecho ningún convenio. Lo hizo él con mi hija." Luego dijo: "Yo no he hecho ningún convenio; mi hija no puede vender, ni yo puedo vender sin estar mi mujer." Al preguntársele que si no era cierto que en 1936 le iban a rematar la finca por falta de pago de las contribuciones, dijo: "Bueno . . . yo debía las contribuciones; debía las contribuciones de ella. Porque a mí se me habían caído; porque mi hija era quien me ayudaba a pagarlas y se le acabó el trabajo y no me pudo ayudar." No sabe si Demetrio Rivera pagó o no las contribuciones adeudadas. Al preguntarle que si no era cierto que vendió las ocho cuerdas para pagar los 93 dólares de las contribuciones, contestó: "No es verdad. Yo no he vendido ningún terreno." Nunca fué llamado por el colector, ni por nadie para hacer el traspaso de las 8 cuerdas a Demetrio Rivera.

*Petra Cordero* declaró que es la hija mayor del demandante. Sabe lo que pasó en relación al negocio de la finca. "Mayormente yo sé; yo oí del negocio de la finca; yo fuí quien intervine con todos en el asunto y tocante a las contribuciones de la finca de mi papá." "De ocho a nueve años hay que fué que nosotros hicimos el arreglo que alega Demetrio Rivera." El "arreglo" lo explicó así:

"Bueno . . . resulta . . . Yo voy a explicar . . . Resulta que como el señor Nelíto Rivera le había vendido a mi papá la finca y no le había dado escritura . . . Yo le voy a explicar a la Corte . . . No le habían entregado la escritura a mi papá y él empezó a hacer un gesto como que sí, y después hizo otro gesto como que no.

"*La Corte:*

"P. Oiga mire ¿es o no es verdad que esta gente Severo Ortiz y Tomás Rivera fueron donde usted con Demetrio Rivera a comprarle las ocho cuerdas y Demetrio Rivera le hizo la compra de las ocho cuerdas?

"R. No."

estaba pagando las contribuciones. Cuando el temporal de 'San Felipe', suspendieron el pago de las contribuciones; para aquella época no pasaban de cien pesos . . . y le suspendieron las contribuciones para ese entonces. Yo trabajaba y le ayudaba a pagar las contribuciones a mi papá. En esos días como habían suspendido el pago de las contribuciones, entonces, pues, ya se sabía que papá no seguía pagando las contribuciones. Bueno . . . Que pasó un año, o algunos años más, cuando un día me escribió el señor Demetrio Rivera un papel a donde me decía que a papá le iban a quitar la finca porque él no había pagado las contribuciones en ese tiempo que también las habían suspendido, que ésa era una cosa mal hecha . . .

"... Entonces yo en realidad no tenía dinero. Y yo fuí donde él y le pedí la escritura, pero que él me dijo que no podía dar la escritura . . . Entonces me dijo que no podía hacer la escritura. Entonces él me dijo que estaban sin pagar las contribuciones. Entonces él vino al pueblo; el señor Demetrio Rivera vino al pueblo; y cuando estoy hablando con el colector fué que me di cuenta de que se debían 96 pesos de contribuciones. Yo le dije al señor Demetrio Rivera que no los tenía; entonces él me dijo 'yo tengo que darte la escritura' 'para que no pierdas el trabajo, yo te doy cuatro pesos más para que pagues el pasaje para completar los cien pesos: 96 pesos para pagar las contribuciones de la finca y cuatro pesos para el pasaje tuyo' y así se pagaron las contribuciones de la finca de mi papá. Resulta que según él dice al señor Cordero él quedó en llevar los recibos, pero yo no sé si papá los recibió.

"El arreglo y todo lo hizo él conmigo . . . A él no se le vendió en ningún momento ninguna finca; lo único que pasó fué que mi papá no tenía la escritura; ni le vendió la finca porque él estaba casado; estaba ignorante para poder vender, y para esa época ya caducaba."

Demetrio Rivera le hizo un préstamo para el pago de las contribuciones "que no estaban *pagas* según él." Ella le ofreció que trabajaría para pagarle. "Quedamos en eso." Como a los cinco o seis meses ella fué con su hermano Gregorio a llevarle a Demetrio los 100 pesos y éste se negó a recibirlos. "Entonces yo lo amenacé a él de que lo iba a llevar a la corte. Luego entonces él hizo una escritura por 10 cuerdas alegando que papá le había vendido ocho cuerdas . . ." Cuando ella y

su hermano fueron a pagarle el dinero a Demetrio ya éste estaba trabajando las ocho cuerdas.

Identificó varios recibos de contribuciones (desde el del año 1935-36 hasta el del año 1937-38) como los pagados por Demetrio, en los cuales figuraba la finca de 18.60 cuerdas para fines contributivos a nombre del demandante.

En la repregunta reiteró que su papá tomó posesión de las 18 cuerdas cuando compró la finca, y las trabajó; que Demetrio no aceptó los cien dólares que ella y su hermano le llevaron. Esto ocurrió en el año 1936. Declaró que para esa fecha "todavía yo creo que él no se había apoderado de las 8 cuerdas." No pudo decir la fecha en que se iba a rematar la finca por contribuciones. Al preguntársele que si en 1936 Demetrio Rivera había pagado las contribuciones, dijo: "Bueno . . . Él pagó las contribuciones; yo no sé vuelvo y le digo si el entregó los recibos a papá. Él quedó en pagar las contribuciones. Luego entonces a los dos o tres meses yo fuí donde él a pagarle el dinero y no lo quiso y después al tiempo fué que él cogió las ocho cuerdas y le hizo una escritura a papá." Conoce a Severo Ortiz y a Tomás Rivera. No es cierto que estos señores fueran con Demetrio Rivera hasta un alto de la finca para mirar la parte de las ocho cuerdas que iba a venderle su papá a Demetrio; que allí estuvieren su hermano, Sinesio Cordero y su mamá. A la pregunta: "¿No es verdad que allí estaban Severo Ortiz y Tomás Rivera con Demetrio, que ustedes cuatro se encontraron allí con ellos en ese sitio en el alto de la finca y firmaron el contrato de venta de las ocho cuerdas?", contestó: "Bueno . . . Este . . . No es cierto. Demetrio fué el único que fué a arreglar ese asunto, un poco más arriba de la casa, pero no subió el cerro tampoco: eso fué cuando el arreglo de las contribuciones; que él no quiso dar la escritura."

Se le deben todavía los 100 dólares ya que él no quiso el dinero. Explica que primero se pagaban contribuciones por 18 cuerdas y después por 10 cuerdas 60 centavos a base de

que "como el papá mío no sabe leer ni escribir él venía a la 'colecturía' y pagaba lo que le decían allí."

Identificó los recibos de contribuciones de los años 1938–39 y 1939–40, expedidos a nombre de su padre, por sólo 10.60 cuerdas.

Todos los recibos fueron admitidos en evidencia.

*Leopoldo Santiago Carmona*, declaró, en síntesis: Es abogado y notario. Ejerce su profesión en Bayamón. Su primera intervención en este caso fué con motivo de una carta que le llevó el Lic. Manuel Reyes Serrano. Nunca compareció ante él Sinesio Cordero para venderle a Demetrio Rivera 8 cuerdas de terreno. Hizo un proyecto de escritura en el cual Demetrio Rivera le vendía a Sinesio 10 cuerdas 60 centavos de terreno. Eso fué el 30 de noviembre de 1943. Demetrio—con un poder de su esposa—fué a su oficina y la firmó. Cordero no aceptó dicha escritura, alegando que la escritura debía hacerse por 18 cuerdas.

*Demetrio Rivera* declaró: En 1936 compró a Sinesio Cordero 8 cuerdas de terreno de una finca que éste había comprado a Nelito Rivera. "Esa finca de 18 cuerdas 60 centavos se la vendió a él Nelito y no tenía documento esa finca. Él habló con Sinesio Cordero diciéndole que tenía que hacer un documento extrajudicial. Entonces un día me dice 'hágame un documento extrajudicial'." Pagó las contribuciones de la finca a nombre de Sinesio Cordero durante los años de 1936 y 1937. "Yo pagué del 1938 al 1939, que ya estaban las contribuciones de las 8 cuerdas divididas. Resulta que nosotros hicimos un documento . . . un documento que está ahí la certificación del documento . . . que me hizo un tal Ramón Díaz, y salieron 18 cuerdas 60 centavos. Entonces en el expediente se pusieron las 18 cuerdas 60 centavos. Se hizo el expediente a nombre mío porque Sinesio no tenía escritura." El expediente se hizo para una finca de 34 cuerdas conviniendo con Sinesio Cordero que éste pagaría los gastos por mitad. "Entonces todo el terreno está a nombre mío porque se hizo un

expediente de dominio a nombre mío de las 34 cuerdas y en ese expediente de dominio se pusieron las 18 cuerdas que salieron 18 cuerdas 60 centavos. En cuanto a los gastos don Sinesio no tenía con qué pagar la parte de él a mí y yo pagué todos los gastos del expediente."

El colector le informó en 1936 que la finca de Sinesio Cordero estaba en pública subasta. Al informárselo él a Sinesio, éste contestó "se perderá porque yo no tengo dinero, páguelos usted si usted quiere comprarme 8 cuerdas." "Yo pagué todo lo que debía de la finca Sinesio Cordero, de las 18 cuerdas. Voy a explicarme. En el 1936 entonces él me vendió 8 cuerdas para pagarle todas sus contribuciones que él debía. Me vendió las 8 cuerdas delante de testigos, delante de Petra y de Flor. Entonces pusimos un pedazo de terreno de él para pagar yo lo que él debía de las contribuciones."

Sinesio Cordero y su esposa hicieron un documento ante Ramón Díaz y otros dos testigos, por el cual le vendían al declarante las 8 cuerdas. Dicho documento fué el que llevó a la colecturía para que le acreditaran a él las 8 cuerdas. La venta que le hizo a Nelito Rivera de las 18 cuerdas fué aproximadamente por el 1920 y el negocio entre Nelito y Sinesio Cordero fué poco después.

Recuerda que la venta que le hizo Sinesio a él de las 8 cuerdas fué en 1936 porque en esa fecha fué que en la colecturía le informaron que se debían las contribuciones y que la finca sería puesta en pública subasta. El precio pagado a Sinesio Cordero por las 8 cuerdas fué $150. "Cincuenta de esos era para pagarle a Jesús Rivera con quien Sinesio tenía una deuda." No es cierto que Petra Cordero y su hermano fueron a su casa a llevarle $100. Las 8 cuerdas pueden valer hoy $200, es un terreno malo "eso es una guinda."

En la repregunta declaró que los recibos de las contribuciones que él pagó a nombre de Sinesio montan a poco más de noventa y tres dólares.

*Felipe Cordero* declaró que es sobrino de Sinesio Cordero. Conoce bien la finca del demandante, "y las fincas que colindan también." En el 1936 la cuerda se vendía como de 35 a 40 dólares. Una cuerda de esos terrenos "de frutos menores puede producir hasta 300 ó 400 pesos al año." Las ocho cuerdas que eran de Sinesio y que ahora son de Demetrio Rivera "es un terreno un poco inclinado." En él se pueden sembrar toda clase de frutos "habichuelas, maíz, batatas, yautías, plátanos."

En la repregunta declaró que el terreno allí se vendía para 1936 en 40 ó 45 dólares la cuerda. Pudo venderse a 25 "depende . . . cualquiera que tuviera una cuerda y la quisiera vender." "En algún tiempo se pudo vender a 10 pesos la cuerda."

### PRUEBA DE LOS DEMANDADOS.

La prueba testifical de los demandados consistió del testimonio del codemandado Demetrio Rivera y de los de Jesús Rivera, Marcelino Torres, Tomás Rivera y Severo Ortiz.

Demetrio Rivera, codemandado, declaró que llevó a cabo un negocio con Sinesio Cordero. Lo explicó así: "Pues esa finca yo se la había vendido al señor Nelito Rivera; y el señor Nelito Rivera se la vendió al señor Sinesio Cordero con un documento extrajudicial, porque no tenía documento esa finca y a quien se la vendiera esa finca tenía que hacer el documento de dominio en las cortes; y así se le vendió al señor Rivera. Tan pronto el señor Nelito Rivera se la vendió al señor Cordero, el señor Cordero tomó posesión de ella. Yo tenía que darle documento extrajudicial al señor Cordero—ése fué el convenio—pero él se negó a admitirlo. Me dice: '¿Qué voy a hacer con un documento extrajudicial?' "

Al lado de la finca vendida a Sinesio Cordero el testigo tenía una de 16 cuerdas sobre la cual también había que hacer un expediente de dominio. Hubo un acuerdo "para hacer el dominio juntando las dos fincas." La tramitación de dicho expediente le salió, "entre unas cosas y otras," por 250 pesos.

"El hombre no tenía chavos para nada y me decía 'Yo te voy a vender parte de la finca para pagarte' y entonces se va para Santurce." En 1936 "lo mandé a buscar a él y le dije: 'Sinesio la finca se va a perder y las 18 cuerdas suyas están en pública subasta también.' Y él me contestó: 'Que se pierdan porque yo no tengo el dinero para pagar las contribuciones.' Yo le dije: 'Es una lástima que la vaya a perder.' Entonces me dice: 'Compre un pedazo que yo siempre le iba a vender a usted un pedazo.' Le contesté: 'Pues le compro el pedazo, pues vamos al negocio.'" "Convinimos entonces las 8 cuerdas en 150 pesos porque él debía 50 pesos que se había comido y estaban apuntados." "El señor se va y trae a su esposa; y trae a su hijo y trae a Petra Cordero y yo invité a Severo Ortiz y a Tomás Rivera para ir a la finca de Sinesio para decir el pedazo que me iba a vender. Y allí convinimos en 150 pesos las 8 cuerdas; y allí nos fuimos los siete. Los puntos eran de un guamá a un tachuelo. Y allí me dijo: 'Ésa es la parte suya y ésta es la parte mía'; la más fértil y ahí le tocó la mejor a él. Yo saqué una libreta; hice números y le dije: 'Pagando estas contribuciones usted y dándole los 50 pesos al señor Jesús Rivera que usted le debe le sobran a usted seis pesos y centavos.' Y le dí entonces para pagar los 50 pesos al señor Jesús Rivera y le di los 5 pesos y centavos que le sobraban de los 100 pesos de las contribuciones."

Declaró además que entró en posesión de las 8 cuerdas y que en 1937 la esposa de Sinesio vino y se quedó en su casa una noche "y firmamos el documento." "Cojo yo el documento el 2 de febrero y se lo llevo al tasador de la propiedad y el tasador me dió de alta a mí y de baja a él en cuanto a esas 8 cuerdas de terreno. Él se quedó con las 10 cuerdas 60 centavos y yo con mis ocho cuerdas."

En 1943 los hijos de Sinesio Cordero fueron donde él y le informaron "que si les daba el terreno ellos me daban los $150 que me habían cogido." Le contestó que no, insistiendo ellos en que les otorgara una escritura por las 18 cuerdas a lo cual él también se negó "porque ustedes me vendieron 8 cuer-

das; yo le doy la escritura de las 10 cuerdas 60 centavos en cualquier momento que ustedes quieran."

En el 1937 fué que le hizo el documento y en 1943 fué que le llevaron los 150 dólares que él no aceptó. Dicho documento "se hizo en la tienda de Rivera y estaba Jesús Rivera presente; y estaba Marcelino Torres y estaba Sinesio Cordero y la señora de él y estaba Ramón Díaz que fué quien hizo el documento." El precio puesto fué de "ciento cincuenta pesos que había recibido ya don Sinesio." "Ese documento yo lo traje a la colecturía, y entonces el 'Tasador de Puerto Rico' lo cogió; y entonces puso a nombre de Sinesio 10 cuerdas 60 centavos y las 8 cuerdas a nombre mío." Los testigos del documento fueron Juan Morales, Marcelino Torres y Jesús Rivera. "Fueron testigos de las marcas porque ellos no sabían firmar y ellos hicieron la cruz; la hizo Sinesio y la hizo su esposa." "Yo se lo llevé el documento al tasador y él me lo dió; y me lo eché en el bolsillo y se me perdió."

En la repregunta: No sabe si dejó el documento con el tasador o si éste se lo devolvió. Sabía que Sinesio no sabía firmar. Jesús Rivera firmó por Sinesio y Juan Morales por su señora. Los dos testigos trabajaban con él, no son "agregados", no viven en su finca. El documento se hizo en la tienda de Jesús Rivera. Lo hizo Ramón Díaz.

*Jesús Rivera* declaró que tiene una tienda en el barrio Palmarito de Corozal. Recuerda "que hicieron allí un documento de una *compraventa* que le hizo a Demetrio Rivera, Sinesio Cordero de ocho cuerdas de terreno." El documento lo hizo Ramón Díaz; allí estaba "el señor Ramón Díaz; estaba un Juan Morales, estaba Marcelino Torres, estaba yo que era el dueño de la tienda y estaba Sinesio Cordero y la señora: *Malla* que es como se dice a la esposa de Sinesio Cordero." "Yo firmé por la doña de él [de Sinesio Cordero] porque ella no sabía firmar, y yo firmé a ruego de ella." Juan Morales firmó como testigo. "Después que firmamos nosotros, ella [la esposa de Cordero] hizo una cruz y el otro hizo una cruz, donde el otro firmó; no sé si fué Marcelino. Don Juan

Morales fué el otro que firmó." En dicho documento Sinesio Cordero le vendía por 150 dólares las ocho cuerdas de terreno objeto de este pleito.

En la repregunta el testigo declaró que desde que llegó a Palmarito, hace 14 años, es socio de Demetrio Rivera; la tienda la tienen "al partir" él y Demetrio Rivera. En 1936, fecha en que se hizo el documento, ya era socio de Demetrio Rivera. Firmó por la esposa del demandante. Lo único que escribió fué su propio nombre, no escribiendo el de ella. El documento lo firmaron "Marcelino Torres y yo y Juan Morales."

*Marcelino Torres* declaró que estaba presente cuando se hizo el documento de compraventa "de un pedazo de terreno como de ocho cuerdas para pagar unas contribuciones." Las ocho cuerdas se las vendió Sinesio Cordero a Demetrio Rivera. El testigo firmó el documento. El documento se hizo "el 4 de noviembre de 1937 en la tienda de Jesús Rivera." Allí estaban Demetrio Rivera, Sinesio Cordero con su esposa, Juan Morales, Ramón Díaz y el declarante. "Yo firmé a ruego de este señor [Sinesio Cordero] que me dijo que firmara por él para él hacer la cruz." A nombre de su esposa firmó Jesús Rivera. Juan Morales murió. Dijo que el precio se pagó "*a cash*". Luego rectificó y dijo: "Pagándole las contribuciones el señor Demetrio Rivera y luego lo que le dió *en cash*." El documento se lo llevó Demetrio Rivera.

En la repregunta el testigo declaró que no recuerda el año en que nació. Se casó el 17 de septiembre de 1927. Tiene un hijo de año y medio y otro de 12 años. No recuerda el día en que nació su hijo. A veces trabaja con Demetrio Rivera "en trabajos de azada y machete." No recuerda cuándo murió su mamá, hace 26 años. Su padre hace cinco años que murió, no recuerda, sin embargo, el año en que murió. A pesar de la dificultad que tiene para recordar fechas, recuerda que el documento se hizo el 4 de noviembre de 1937. Lo atribuye a "por muchas cosas que se recuerda uno de momento. . ."

"Tengo en la mente el recuerdo de ese día en que se hizo el documento. Ahora no puedo explicar el por qué." Recuerda que el documento se hizo cerca de las 3 de la tarde, en la tienda de Jesús Rivera. Nadie le recordó—antes del juicio—la fecha en que se hizo el documento.

*Tomás Rivera* declaró que estuvo presente en una ocasión en que Demetrio Rivera y Sinesio Cordero hicieron un contrato en Corozal. Dicho contrato era sobre "ocho cuerdas que le compró Demetrio Rivera a Sinesio Cordero." Fué hecho "en presencia mía y en presencia de su esposa; en presencia de un hijo, de Flor Cordero, y en presencia de una hija Petra; de Demetrio Rivera y de Sinesio Cordero, que todos estaban presentes." Estaba además Severo Ortiz presente. Explica el contrato en la siguiente forma: "Que le vendió 8 cuerdas Sinesio a Demetrio en 150 pesos; le dió para las contribuciones 93 pesos y pico; eso para los derechos; y le dió 50 pesos para Jesús Rivera; y el resto del dinero se lo entregó a don Sinesio Cordero." Dicho contrato fué hecho "en el terreno de las 8 cuerdas, en un cerrito alto, entonces el señor Sinesio Cordero le nombró de un *palo* de guamá a un *palo* de masa; allí arriba las ocho cuerdas, para arriba, para el cerro y le dijo 'de ahí para arriba son las ocho cuerdas' y allí para abajo era el resto de él." A los quince días de ese contrato él mismo cercó las ocho cuerdas.

En la repregunta declaró que es hermano de Demetrio Rivera. Vive en una finca de él. No puede precisar el día que sucedió lo que relató "porque hay tanto tiempo." No estaba presente el día que se hizo el documento. El dinero lo llevó Demetrio Rivera. "Que los 93 pesos y pico eran para pagar los *derechos* que Sinesio debía; 50 pesos que le pagó a Jesús Rivera, que se los debía Sinesio; y el resto se lo entregó a Sinesio Cordero, que eran seis pesos y centavos.". El dinero lo entregó "en billetes y *chavos*, seis pesos y centavos." No es cierto que esos seis dólares se los había dado Demetrio a Petra, la hija de Sinesio Cordero, días antes en presencia del declarante.

*Severo Ortiz* declaró que estuvo presente cuando Sinesio Cordero le vendió a Demetrio Rivera ocho cuerdas de terreno. "Fuimos yo a la finca, Demetrio Rivera, Tomás Rivera, Felipe Cordero y Amalia Muñoz y allí hicieron el negocio de las ocho cuerdas." Sinesio Cordero vendió a Demetrio Rivera 8 cuerdas de terreno por 150 dólares. "Él [Demetrio Rivera] pagó las contribuciones, que son 93 pesos y centavos, le dió 50 pesos a Jesús Rivera que se los debía Sinesio; y le dió el resto de los chavos: seis pesos y centavos y los recibió Sinesio Cordero." Demetrio Rivera "tomó posesión de las ocho cuerdas que él se las nombró de una *guamá* a una *masa.*"

En la repregunta declaró que es cuñado de Demetrio Rivera. Vive en la finca de Demetrio Rivera con quien trabaja. Demetrio Rivera le entregó a Sinesio Cordero "seis billetes y un menudo."

La prueba documental consistió de una copia certificada de la planilla núm. 1132 expedida por el Tasador N. Shepard el 2 de febrero de 1938 contentiva de la descripción de la finca de 8 cuerdas sometida por Demetrio Rivera para el año 1938–39; y de la solicitud de dicho Tasador al Tesorero para la división de la finca de 18.60 cuerdas en dos fincas para el año 1938–39, una de 10.60 y otra de ocho cuerdas, la primera a nombre de Sinesio y la segunda a nombre de Demetrio. En dicho documento se consigna lo siguiente: "Razones: Doc. Ex. Jud. 4 Nov. 1937. Testigo Juan Morales."

En *rebuttal,* el demandante Cordero negó que para el año 1936 hiciera negocio alguno con Demetrio Rivera con relación a 8 cuerdas de terreno, o que le pidiera dinero al demandado para mandar a buscar a su esposa para firmar documento alguno. Declaró haber insistido con Demetrio en que le diera escritura por las 18 cuerdas y no haber recibido en 1943 ningún proyecto de escritura por 10 cuerdas 60 centavos del Lic. Santiago Carmona. No pudo explicar por qué tardó once años en iniciar el pleito desde que Demetrio cogió las 8 cuerdas.

Con esa prueba ante sí, el juez sentenciador llegó a las siguientes conclusiones de hecho:

"Por el resultado de la prueba, la corte estima que se le ha probado satisfactoriamente que allá para el año 1929 Sinesio Cordero compró a Demetrio Rivera y esposa y por el precio que pagara de setecientos dólares, una finca ubicada en el barrio Palmarito de Corozal de unas diez y ocho cuerdas sesenta céntimos de terreno, la cual está descrita en el párrafo segundo de la primera causa de acción de la demanda. Éste fué un contrato verbal.

"Se ha establecido también satisfactoriamente que más tarde Demetrio Rivera facilitó en calidad de préstamo a Sinesio Cordero la suma de ciento cincuenta dólares para ciertos gastos, incluyendo el pago de las contribuciones de la finca nombrada, no habiéndole satisfecho dichos ciento cincuenta dólares Sinesio Cordero a Demetrio Rivera. Se ha probado también satisfactoriamente que hubo un convenio entre Sinesio Cordero y Demetrio Rivera para que éste tramitara un expediente de dominio de una finca de mayor cabida a su nombre en donde se incluyera la finca de diez y ocho cuerdas sesenta céntimos, comprometiéndose Sinesio Cordero a satisfacer la suma de cien dólares a Demetrio Rivera como pago de los gastos en que se incurrieran en la tramitación del expediente aludido.

"Cree la corte que con motivo de no haber satisfecho Sinesio Cordero a Demetrio Rivera los ciento cincuenta dólares que le prestara, más los cien dólares gastados en el expediente de dominio de referencia, Demetrio Rivera ha creído tener derecho a quedarse con ocho de las diez y ocho cuerdas sesenta céntimos que le vendiera a dicho Sinesio Cordero. Sin embargo, para la corte la realidad es que Demetrio Rivera y esposa le vendieron a Sinesio Cordero las diez y ocho cuerdas sesenta céntimos descritas en el párrafo segundo de la primera causa de acción de la demanda por el precio de setecientos dólares, que pagara el comprador a los esposos vendedores, y ahora estos vendedores, una vez hecho el expediente de dominio aludido en esta Relación de Hechos y Opinión, se niegan a otorgar la correspondiente escritura inscribible en el Registro de la Propiedad.

"También se ha probado que Sinesio Cordero adeuda a Demetrio Rivera la cantidad de doscientos cincuenta dólares y que es obligación de Cordero satisfacer tal suma de dinero.

"Los daños y perjuicios alegados en la demanda no han sido probados a satisfacción de la corte."

Si en este caso se tratara de un mero conflicto entre la prueba de una y otra parte, podríamos repetir aquí lo que en tantos otros casos hemos dicho: que estando el juez sentenciador en mejor posición que este Tribunal para determinar el grado de credibilidad que merecía cada uno de los testigos que ante él declararon, no intervendremos con sus conclusiones sobre los hechos. Pero en este caso hay importantes elementos de prueba—de los cuales no puede prescindirse al pesar la evidencia—cuyo examen nos lleva a la inevitable conclusión de que el tribunal a quo erró en la apreciación de la prueba. Pasemos a analizarlos.

El juez sentenciador llegó a la conclusión de que el demandante Cordero compró a *Demetrio Rivera* y esposa la finca de 18.60 cuerdas objeto del pleito. Sin embargo, la prueba de ambas partes estableció definitivamente que Cordero le compró dicha finca, mediante contrato verbal, a Manuel (Nelito) Rivera, a quien en igual forma la había vendido Demetrio, y que como la finca no tenía título inscrito, Demetrio convino con Nelito y Cordero en tramitar un expediente de dominio a nombre propio sobre una finca de mayor cabida, que comprendía la de 18.60 cuerdas, para entonces otorgarle título directamente a Cordero, pagando éste parte de los gastos.

El juez sentenciador llegó a la conclusión de que Demetrio *creyó tener derecho* a quedarse con 8 de las 18.60 cuerdas de Cordero. Sin embargo, la prueba incontrovertida demostró que Demetrio comenzó a disfrutar de las 8 cuerdas en el año 1937, cercándolas y cultivándolas desde entonces, sin que Cordero diera paso alguno para impedirlo, y que para el año contributivo 1938–39 los recibos de contribuciones de la finca de 18.60 cuerdas que hasta el año 1937–38 habían sido expedidos por dicha cabida a nombre de Sinesio Cordero, fueron expedidos a éste por una finca de sólo 10.60 cuerdas—así descrita en dichos recibos—pagando Cordero desde entonces contribuciones tan sólo por esta última cabida, sin que diera paso alguno en Colecturía para corregir esa situación. Desde ese año 1938–39 en adelante se expedía otro recibo por las 8 cuer-

das restantes a favor de Demetrio. Sobre este extremo, la prueba documental demuestra que la tasación y cobro de las contribuciones a Cordero por sólo 10.60 cuerdas, y a Demetrio por 8, desde el año 1938–39, fué llevada a cabo en virtud de un *documento extrajudicial* de fecha 4 de noviembre de 1937, presentado al Tasador N. Shepard, el 2 de febrero de 1938, según hizo éste constar en la planilla (forma 241 del Tesorero) que preparó a tales fines, y en la cual señaló como testigo a Juan Morales. Aun cuando no se presentó en evidencia el documento extrajudicial a que hizo referencia el Tasador Shepard en la referida planilla, la prueba de los demandados acreditó (1) su existencia; (2) su presentación al Tasador a los fines ya indicados y (3) su imposibilidad de producirlo en corte por haberse extraviado, además del alcance de la transacción que dicho documento representaba.

La constancia en los archivos oficiales de Tesorería de cómo se produjo en 1938 la división, para fines contributivos, de la finca de 18.60 cuerdas, al hacer referencia al documento que sirvió de base a dicha actuación, no justifica—en ausencia de prueba demostrativa de fraude—la conclusión del tribunal sentenciador de que Demetrio se apoderó de las 8 cuerdas porque creyó tener derecho a quedarse con ellas por no haberle satisfecho Cordero $250 que le adeudaba. Por el contrario, es indicio—en ausencia de prueba de fraude—de que la división, para fines contributivos, se llevó a cabo con la conformidad de la persona a cuyo nombre figuraban los recibos por la totalidad de la finca, indicio éste que toma la forma de inferencia inevitable al unirlo al hecho incontrovertido de que Cordero desde el año 1938–39 en adelante pagó las contribuciones por sólo 10.60 cuerdas, sin que al así hacerlo protestara de dicha división. Dicha constancia en los archivos de Tesorería robustece además la contención de Demetrio de que Cordero le vendió las 8 cuerdas para evitar que la totalidad de la finca se perdiera por falta de pago de las contribuciones.

Forzosa es, por lo tanto, la conclusión de que el tribunal a quo erró en la apreciación de la prueba, y en consecuencia,

en la resolución del caso, ya que si bien Demetrio venía obligado, por haberlo así convenido, a otorgar escritura directamente a Cordero por las 18.60 cuerdas, tan pronto tramitara el expediente de dominio de que hemos hablado anteriormente, una vez vendida por éste parte de dicha finca a Demetrio, cesó la obligación de este último de trasmitirle título sobre *la totalidad* de la finca, ya que al adquirir parte de la misma sin haberse desposeído aún del título que para beneficio de Cordero obtuvo en el expediente de dominio, y que retenía, se reunieron o consolidaron en él desde ese momento tanto su derecho al título como el título mismo sobre la parte recién adquirida. En consecuencia viene obligado Demetrio Rivera a otorgar a favor de Sinesio Cordero escritura por sólo 10.60 cuerdas en lugar de por 18.60 cuerdas; y Sinesio Cordero a pagar a Demetrio Rivera tan sólo la suma de cien dólares por concepto de gastos en la tramitación del expediente de dominio.

■ Declarando con lugar el tercer señalamiento en aquella parte por la que se le atribuye error en la apreciación de la prueba, precisa—en merecida justicia al juez sentenciador—rechazarlo en aquella parte por la que se le imputa haber actuado "con mente prevenida y con pasión y prejuicio." Dicha imputación no está justificada. Lejos de ello, el juez sentenciador actuó con mesura y fué escrupuloso en extremo. Ello precisamente porque tal actitud, que constituye norma deseable de actitud judicial en todo caso, en éste se hacía imperativa, porque aquí, como en otros casos de su representación profesional, el abogado de los demandados había solicitado la inhibición del Juez, por el fundamento de ser "enemigo personal irreconciliable" suyo, cuestión ésta que ya anteriormente se había ventilado ante un juez especial, siendo desestimada. *Rivera* v. *Corte,* 71 D.P.R. 953.([3])

---

([3]) El presente pleito fué fallado por el juez sentenciador con anterioridad a nuestra decisión en el caso de *Rivera* v. *Corte,* supra, en el cual— no obstante desestimar las alegaciones de prejuicio hechas por el mismo abogado contra el mismo Juez aquí apelado—sugerimos su inhibición ya que con ello "estaría cooperando para mantener a los tribunales fuera de la más leve sospecha de parcialidad."

Equivocarse en la apreciación de la prueba, al igual que equivocarse en la aplicación de la ley, es un error en el cual podemos incurrir todos los que llevamos sobre nuestros hombros la difícil tarea de impartir justicia. Y un abogado tiene perfecto derecho a plantearlo en apelación, a nombre de su cliente, si considera que aquél es manifiesto. Con ello cumple a cabalidad su gestión profesional.

Actuar "con mente prevenida y con pasión y prejuicio" al llevar a cabo su función judicial, no sería un mero error del juzgador: sería el incumplimiento esciente del deber de honradez de conciencia, que hace del Juez un símbolo y del Tribunal un templo en los conglomerados civilizados. Por el sitio que ocupan en la sociedad y por su condición de funcionarios de los tribunales, los abogados deben ser cautelosos al hacer a un Juez imputaciones de tal magnitud y alcance, y ello solamente si están convencidos, en lo más profundo de sus conciencias—a la vez no prevenidas— de la certeza de sus afirmaciones, y entonces para exigir la verdadera responsabilidad que tan grave desviación del deber conlleva. En el caso de autos, no obstante, creemos que el abogado, aunque equivocado, creía de buena fe en la validez de su queja.

*La sentencia será modificada, limitándose sus efectos, (1) en cuanto a la demanda, al otorgamiento de escritura por sólo 10.60 cuerdas; y (2), en cuanto a la contrademanda, a la suma de cien dólares.*